UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

SKAT TAX REFUND SCHEME LITIGATION

18-md-2865 (LAK)

This document relates to:

18-cv-05053, 18-cv-09797, 18-cv-09836, 18-cv-09837,
18-cv-09838, 18-cv-09839, 18-cv-09840, 18-cv-09841,
18-cv-10100

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

William R. Maguire
Marc A. Weinstein
Neil J. Oxford
HUGHES HUBBARD & REED LLP
*Attorneys for Plaintiff*

John C. Blessington
Brandon R. Dillman
Michael R. Creta
John L. Gavin
K&L GATES LLP
*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

This multidistrict litigation concerns an alleged scheme to defraud the Customs and

Tax Administration of the Kingdom of Denmark ("SKAT"). After discovering the alleged

misconduct, SKAT filed in federal court 140 complaints against more than a hundred pension plans

and the plans' agents and representatives.[1]  According to these complaints, the plans obtained many millions of dollars in tax refunds by falsely claiming to own stocks in Danish companies that had paid dividends net of tax withholding.  The Court assumes familiarity with the underlying facts, which are detailed in its prior decisions.[2]

Relevant to this motion to dismiss, SKAT amended its complaints in the spring of 2020 and added claims against new defendants Acer Investment Group, LLC ("Acer"), Darren Wittwer, Louise Kaminer, and Robert Crema (the "New Defendants").  Cases in which they were named (the "Utah Actions") initially were filed in the District of Utah and later transferred to this Court and consolidated for pre-trial purposes.[3]  Acer was named also in actions originally filed in

---

[1]     The pension plans relevant to this motion include the Kamco Investments, Inc. Pension Plan (the "Kamco Plan"), the DW Construction, Inc. Retirement Plan (the "DWC Plan"), the American Investment Group of New York, L.P. Pension Plan (the "AIG Plan"), the Newsong Fellowship Church 401(k) Plan (the "Newsong Plan"), the Goldstein Law Group PC 401(K) Profit-Sharing Plan (the "Goldstein Plan"), the Kamco LP Profit Sharing Pension Plan, the Linden Associates Defined Benefit Plan, the Moira Associates 401(K) LLC Plan, and the Riverside Associates Defined Benefit Plan.

[2]     *See In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 307-09 (S.D.N.Y. 2019); *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-5053 (LAK), 2020 WL 70938, at *1 (S.D.N.Y. Jan. 7, 2020); *In re SKAT Tax Refund Scheme Litig.*, No. 18-cv-5053 (LAK), 2020 WL 400718, at *1 (S.D.N.Y. Jan. 23, 2020); *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-5053 (LAK), 2020 WL 3962066, at *1 (S.D.N.Y. July 13, 2020).

[3]     SKAT v. American Investment Group of New York, L.P. Pension Plan, 18-cv-09841, Amended Complaint [hereinafter AIG Am. Compl.] [DI 89]; SKAT v. DW Construction, Inc. Retirement Plan, 18-cv-09797, Amended Complaint [hereinafter DWC Am. Compl.] [DI 131]; SKAT v. Kamco Investments, Inc. Pension Plan, 18-cv-09836, Amended Complaint [hereinafter Kamco Am. Compl.] [DI 87]; SKAT v. Kamco LP Profit Sharing Pension Plan, 18-cv-09837, Amended Complaint [DI 87]; SKAT v. Linden Associates Defined Benefit Plan, 18-cv-09838, Amended Complaint [DI 82]; SKAT v. Moira Associates LLC 401(k) Plan, 18-cv-09839, Amended Complaint [DI 88]; SKAT v. Riverside Associates Defined Benefit Plan, 18-cv-09840, Amended Complaint [DI 88].

this Court (the "New York Action") and in the Eastern District of Pennsylvania (the "Pennsylvania Action").[4]

According to the amended complaints, Acer acted as the plans' representative and directed the plans' broker-custodian, ED&F Man Capital Markets Ltd. ("ED&F"), to create fraudulent "tax vouchers" that were submitted on behalf of the plans' tax refund applications.[5] SKAT claims also that Acer selected the Danish securities that ED&F listed on these tax vouchers.[6] The amended complaints allege that Acer received a percentage of the tax refunds that SKAT paid the pension plans.[7]

The other new defendants, Wittwer, Kaminer, and Crema (the "New Individual Defendants"), are alleged to have been participants in the DWC Plan, the Kamco Plan, and the AIG Plan, respectively.[8] The amended complaints allege that they were officers, directors, or employees

---

[4]    SKAT v. The Goldstein Law Group PC 401(k) Profit Sharing Plan, 18-cv-05053, Amended Complaint [hereinafter Goldstein Am. Compl.] [DI 155]; SKAT v. Newsong Fellowship Church 401k Plan, 18-cv-10100, Amended Complaint [hereinafter Newsong Am. Compl.] [DI 126].

[5]    See e.g., AIG Am. Compl. ¶ 62.

[6]    Id.

[7]    Id.

[8]    See e.g., Id. ¶ 18.

4

of their plans' sponsors.[9]  In addition, Wittwer's and Crema's business addresses allegedly were

listed on their plans' tax refund claims to SKAT.[10]

## *Discussion*

I.    *Personal Jurisdiction*

New Defendants Acer, Kaminer, and Crema argue that the Court lacks personal

jurisdiction over them.

In multidistrict litigation such as this, personal jurisdiction must be proper in the

forum from which each complaint was transferred.[11]  Accordingly, the Court considers whether

jurisdiction over Acer is proper in New York and Pennsylvania, and separately, whether jurisdiction

is proper over Kaminer and Crema in Utah.[12]

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff

must make a prima facie showing that jurisdiction exists."[13]  When evaluating a motion to dismiss

---

[9]      *Id.*

[10]     *Id.*

[11]     *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 n. 4 (2d Cir. 2018).  The
Court nonetheless applies the Second Circuit's "interpretations of federal law, not the
constructions of federal law of the transferor circuit." *Id.*

[12]     Defendants do not argue that jurisdiction over Acer or Wittwer is improper in Utah.

[13]     *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)
(quotation marks omitted) (*quoting Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)).

for lack of personal jurisdiction, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."[14]

A.    *Personal Jurisdiction over Acer*

Due process requires that "before a court may exercise jurisdiction over a person or an organization . . . that person or entity must have sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[15]  Contacts with the forum may confer two types of jurisdiction – general or specific.[16] General jurisdiction is based on a "defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."[17]  On the other hand, specific jurisdiction exists "over a defendant in a suit arising out of or related to the defendant's contacts with the forum."[18]  Courts may exercise specific jurisdiction where defendants "purposefully derive benefit from their interstate activities."[19]  For this reason, jurisdiction is proper where a defendant "has created continuing obligations between himself

---

[14]    *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted).

[15]    *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[16]    *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

[17]    *Id*. at 568 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn. 8-9 (1984)).

[18]    *Id*. at 567-68.

[19]    *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985) (quotation marks omitted).

6

and residents of the forum" and "manifestly has availed himself of the privilege of conducting business there."[20]

This standard for specific jurisdiction is satisfied here.  With respect to the Pennsylvania Action, SKAT alleges that Acer acted as the agent and representative for the Pennsylvania-based Newsong Plan and directed ED&F to create fraudulent tax vouchers that were submitted to SKAT on behalf of the Newsong Plan.[21]  The allegations in the New York Action are much the same: SKAT alleges that the New York-based Goldstein Plan authorized Acer to act as its agent and representative in obtaining the fraudulent tax vouchers from ED&F.[22]  Acer cannot escape jurisdiction in Pennsylvania or New York after purposefully engaging in a business relationship with entities in each of these states that led to SKAT's claims in this action.[23]

---

[20]     *Id.* at 476 (quotation marks omitted).

[21]     Newsong Am. Compl. ¶¶ 17, 59.

[22]     Goldstein Am. Compl. ¶¶ 17, 61.

[23]     For the same reason, personal jurisdiction over Acer is authorized by the Pennsylvania and New York long arm statutes.  *See* 42 Pa. Cons. Stat. Ann. § 5322(b) (authorizing the exercise of personal jurisdiction to the fullest extent permitted by the U.S. Constitution); N.Y. C.P.L.R. § 302(a)(1) (authorizing the exercise of personal jurisdiction over a party who "transacts any business within the state").

B.    *Jurisdiction over Kaminer and Crema*

      The amended complaints in the Utah actions do not allege any facts directly linking Kaminer or Crema to Utah.  But jurisdiction still may be proper because defendants and their "'alter egos are treated as one entity' for jurisdictional purposes."[24]  In fact, federal "courts have uniformly found that it is consistent with due process to impute a corporation's waiver of personal jurisdiction to . . . its individual alter ego."[25]  Here, the Kamco Plan and the AIG Plan waived any objections to personal jurisdiction by not raising the defense in their answers to the amended complaints.[26]  SKAT claims that jurisdiction is proper over Kaminer and Crema because they are *alter egos* of the pension plans they participated in.[27]

      To pierce the corporate veil on the basis of an *alter ago* relationship, courts require that "(1) the person exercised dominion and control with respect to the transaction attacked such that the corporation had no separate will of its own; and (2) the domination was used to commit a fraud

---

[24]    *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (*quoting Wm. Passalacqua Builders Inc. v. Resnick Dev. So., Inc.*, 933 F.2d 131, 143 (2d Cir. 1991)).

[25]    *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653-54 (5th Cir. 2002).  *See also Transfield*, 571 F.3d at 224 (courts can exercise "personal jurisdiction over a party where its corporate alter ego 'participated fully in the proceedings and therefore waived any objections to lack of service of process.'" (*quoting Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991))).

[26]    *See* Kamco Plan Answer [18-cv-9836, DI 111]; AIG Plan Answer [18-cv-9841, DI 113]. Fed. R. Civ. P. 12(h).

[27]    Pl. Br. [18-md-2865, DI 436] at 16.

8

or wrong against the plaintiff, which proximately caused the plaintiff's injuries."[28]  "But this

standard is relaxed where the *alter ego* theory is used not to impose liability, but merely to establish

jurisdiction."[29]  In the jurisdictional context, the Court considers only whether the controlled party

was a shell for the controlling party.[30]

    According to the amended complaint, Kaminer was the sole participant in the Kamco

Plan.[31]  Moreover, the complaint alleges that Kaminer was listed as the president of the Kamco

Plan's sponsor.[32]

    These allegations are insufficient to support an inference that Kaminer controlled the

Kamco Plan.  As a preliminary matter, the fact that Kaminer was a participant in the Kamco Plan

entitles her to receive benefits from the plan, but does not demonstrate that she controlled or

---

28

    *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d at 322–23 (*citing American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988)).

    Courts disagree about whether federal law or state law applies for jurisdictional purposes to an *alter ego* claim.  *See In re Lyondell Chem. Co.*, 543 B.R. 127, 139 (Bankr. S.D.N.Y. 2016).  Because neither party raises this issue, the Court applies the law relied on by the parties.  In general, unless otherwise noted, the parties do not dispute the applicable law or contend that the Court should undertake a choice of law analysis for any of the issues raised in defendants' motions to dismiss.  Where the parties' briefs assume that a particular jurisdiction's law applies, such "implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).  Accordingly, the Court applies the law of the jurisdiction relied upon by the parties.

29

    *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007).

30

    *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

31

    Kamco Am. Compl. ¶ 18.

32

    *Id.* ¶ 47.

dominated the plan.[33]  Likewise, Kaminer's role as the president of the Kamco Plan's sponsor –

which funds the plan, but doesn't necessarily manage or administer the plan – does not indicate that

she controlled the plan.[34]  Because SKAT has not adequately pled facts suggesting that the Kamco

Plan was a shell controlled by Kaminer, the Court cannot assert jurisdiction over Kaminer as the

plan's *alter ego*.[35]

 With regard to Crema, the amended complaint alleges that he was the only officer

or director of the AIG Plan's sponsor.[36]  It is reasonable to infer from this that Crema controlled the

AIG Plan's sponsor.  The complaint alleges also that Crema's office address was listed on the AIG

---

[33]  For example, the Employee Retirement Income Security Act ("ERISA"), which establishes federal laws governing private pension plans, defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7).  While ERISA is not at issue here, it provides helpful context regarding the structure of pension plans.

[34]  In the context of ERISA liability, the Department of Labor explained that officers and directors of a pension plan's sponsor are not fiduciaries of the plan "solely by reason of holding such office" because, among other reasons, they do not necessarily have control or authority to manage the plan. 29 C.F.R. § 2509.75-8. *See also Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1036 (N.D. Ill. 2007) (holding that the mere fact that a plan's sponsor funded the plan is insufficient to demonstrate that the plan's sponsor is the plan's *alter ego*).

[35]  The Court notes that Kaminer may have acted also as a trustee for the Kamco Plan. *See* Def. Reply Br. [18-cv-2865, DI 444] at 3; Blessington Declaration [18-cv-2865, DI 445], Exhibit C at 74.  SKAT does not raise this issue or explain whether this role allowed Kaminer to control or dominate the plan, and the Court declines to consider it *sua sponte*.

 SKAT argues also that personal jurisdiction exists over Kaminer because Acer acted as the Kamco Plan's agent in Utah. Def. Br. at 17-18.  Because this argument depends on an *alter ego* relationship between the Kamco Plan and Kaminer, it is of no avail.

[36]  AIG Am. Compl. ¶¶ 47-48.

Plan's tax refund applications.[37]  This allegation, coupled with Crema's alleged control of the plan's sponsor, permits an inference that Crema controlled the plan as well.[38]

Based on this *prima facie* showing, Crema may be treated as the AIG Plan's *alter ego* for jurisdictional purposes.  Because the plan waived any objections to personal jurisdiction, SKAT has sufficiently alleged that the Court has jurisdiction over Crema as well.

II.    *Timeliness*

Defendants argue that SKAT's claims are untimely under the governing statute of limitations in Utah and Pennsylvania, each of which are two, three, or four years depending on the cause of action.[39]  According to the amended complaints, the plans submitted fraudulent tax refund claims to SKAT from the spring of 2014 until the spring of 2015.[40]   SKAT paid out the requested

---

[37]

*Id.*

[38]

*See In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d at 323 & n. 120.

It appears that Crema served also as a trustee for the AIG Plan.  *See* Def. Reply Br. at 3; Blessington Declaration [18-cv-2865, DI 445], Exhibit A at 73.  Once again, because SKAT has not explained the significance of this role, the Court declines to consider it.

[39]

Defendants argue that SKAT's fraud based claims in the Utah action needed to be brought within three years after the claim arose, and that SKAT's negligent misrepresentation, unjust enrichment, and moneys had and received claims needed to be filed within four. Def. Br. at 6.  Defendants argue also that SKAT's fraud based claims in the Pennsylvania action needed to be brought within two years of SKAT's injury, and that SKAT's unjust enrichment and moneys had and received claims needed to be brought within four.  *Id.* at 8.

[40]

AIG Am. Compl. ¶ 39.

tax refunds during this same period.[41]  While SKAT brought these actions in 2018 originally, it did

not assert its claims against the New Defendants until 2020.

      SKAT does not contest the applicable statutes of limitation, but argues that its claims

nonetheless are timely.  It contends that the amended complaints "relate back" to the original

complaints filed in 2018.   In any case, it argues, the statute of limitations was tolled until SKAT

discovered the fraud.  The Court considers these arguments in turn.

### A.  *Relation Back*

      Federal Rule of Civil Procedure 15(c) governs whether SKAT's amended complaints

"relate back" to the original complaints filed in 2018.[42]  Because SKAT's amended complaints

"change[] the party or the naming of the party against whom a claim is asserted" the Rule requires

that, among other things "the party to be brought in by amendment. . . . knew or should have known

that the action would have been brought against it, but for a mistake concerning the proper party's

identity."[43]  The Supreme Court has emphasized that the relevant issue under this provision is "not

---

41

      *Id.* ¶ 46.

42

      "The Rules Advisory Committee directs courts" to compare federal and state law and apply whichever law "affords a more forgiving principle of relation back." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).  The Court notes that "several courts, including the Third Circuit, have recognized that Pennsylvania law does not afford a more forgiving relation back principle" than the federal rule. *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 80 (E.D.N.Y. 2015) (quotation marks omitted).  With regard to Utah law, "the 2016 amendments to Utah Rule of Civil Procedure 15(c) adopt the approach of Federal Rule 15(c) regarding the relation-back of an amended pleading when the amended pleading adds a new party." Utah Rules Civ. Proc., Rule 15, advisory committee notes to the 2016 amendment.  In addition, because neither party has suggested that either state's current law provides a more forgiving principle, the Court will apply the federal rule.

43

      Fed. R. Civ. P. 15(c)(1)(C).

whether [the plaintiff] knew or should have known the identity of [the party it seeks to add by amendment] as the proper defendant, but whether the [party the plaintiff seeks to add] knew or should have known that it would have been named as a defendant but for an error."[44]

Courts in this Circuit disagree about whether Rule 15 applies when an amended complaint adds a defendant instead of substituting one defendant for another.[45] But as this Court noted previously, "[t]he history of Rule 15 itself indicates that it was enacted to respond to . . . wrongful identification of the party whose conduct is described in the complaint."[46] Adding new defendants because the plaintiff discovers that more individuals may have been involved than it realized initially is not the type of "mistake" that is contemplated by Rule 15.

Here, SKAT "do[es] not argue that any allegations in the earlier complaint actually related to [the New Defendants] rather than to the entities or individuals to which they were attributed."[47] Because none of the allegations in the original complaint relate to the New Defendants or described their roles in the scheme, the allegations would not have alerted the New Defendants that their absence from the complaint had been a mistake. The claims against the New Defendants therefore do not relate back to the original complaint, and they instead must have been asserted within the statutory period.

---

[44] *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010).

[45] *See e.g.*, *Wingspan Records, Inc. v. Simone*, No. 12-cv-2172 (NRB), 2014 WL 2116191, at *5-6 (S.D.N.Y. May 16, 2014) (collecting cases).

[46] *In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 507 (S.D.N.Y. 2010).

[47] *Id.*

13

B.    *Statute of Limitations*

A defendant bears the burden of proof in arguing that a claim is untimely.[48]  While a statute of limitations defense may be raised on a motion to dismiss, "[t]he pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses."[49]  In fact, a motion to dismiss based on untimeliness "should not be granted unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."[50]

i.    *Statute of Limitations in the Utah Action*

According to Utah law, SKAT's claims for fraud or aiding and abetting fraud must be brought within three years "except that the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."[51]  This exception is a statutory

---

[48]     *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir.1995).  *See also Szymanski v. Local 3, Int'l Bhd. of Elec. Workers*, 577 F. App'x 52, 53 (2d Cir. 2014) (same).

[49]     *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). S*ee also Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009) (plaintiff is "not required to preemptively plead facts refuting" an affirmative defense).

[50]     *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (emphasis in original) (*quoting Abdul–Alim Amin v. Universal Life Insurance Co.*, 706 F.2d 638, 640 (5th Cir.1983)).  *See also Corp. Trade, Inc. v. Golf Channel*, 563 F. App'x 841 (2d Cir. 2014) (same).

[51]     Utah Code Ann. § 78B-2-305(3).

"discovery rule."[52] Under this rule, the statute of limitations begins running when a plaintiff "either discovered or should have discovered his or her cause of action."[53] Determining "at what point a party should have reasonably discovered its claim is a fact-intensive inquiry that precludes judgment as a matter of law in all but the clearest of cases."[54]

According to the amended complaints, SKAT discovered a scheme to obtain fraudulent tax refunds by certain Malaysian entities in June 2015.[55] The New Defendants argue that SKAT must have been aware of its claims at that point, and at the very latest by August 2015 when SKAT stopped paying all refund claims – including claims from U.S. entities – and reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime.[56] Because SKAT waited until 2020 to bring its claims against the New Defendants, they argue that those claims are untimely and must be dismissed.

SKAT responds that it was not aware of the New Defendants' role in the scheme until much later and that the statute of limitation therefore did not begin to run in 2015. It argues that

---

[52]  "Utah courts recognize three situations in which the discovery rule applies: when there is (1) a statutory tolling provision, (2) an exceptional circumstance, or (3) fraudulent concealment." *Bistline v. Parker*, 918 F.3d 849, 880 (10th Cir. 2019) (*citing Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 810 (Utah 2007)). Where the statute providing the statute of limitations includes a tolling provision, the discovery rule applies regardless of equitable factors or fraudulent concealment. *See Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 625 n. 11 (Utah Ct. App. 2003) *aff'd* 108 P.3d 741.

[53]  *Russell/Packard Development, Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005).

[54]  *Shiozawa v. Duke*, 344 P.3d 1174, 1180 (Utah Ct. App. 2015) (quotation marks omitted).

[55]  AIG Am. Compl. ¶ 6.

[56]  Def. Reply Br. at 2; AIG Am. Compl. ¶ 8.

according to the Court of Appeals of Utah, the discovery rule should toll the statute of limitations until a plaintiff discovers "the identity of the tortfeasor."[57]

SKAT's emphasis on the identity of the tortfeasor is misplaced. The Utah Supreme Court has held that the limitations period can begin to run before a plaintiff "discover[s] the specific individual responsible for his injury."[58] But that does not end the inquiry because the Court must consider when SKAT "discovered or should have discovered [its] cause of action" for the fraud alleged in this action.[59] While the statute of limitations may begin to run before SKAT knew each defendant's role in the alleged fraud, the Court cannot properly assume that SKAT's knowledge of some fraudulent tax refund applications implies its knowledge as to others, including those relevant here.

Undoubtably, SKAT needed to exercise reasonable diligence to discover its claims once it was aware of the fraud in 2015. But it is plausible that SKAT could not discover that the refund claims at issue were fraudulent at that time. Because there remains "some doubt" as to what SKAT knew and could have discovered with reasonable diligence, the Court concludes that defendants have not met their burden.[60]

---

[57]    Pl. Br. at 21 (*quoting Robinson v. Morrow*, 99 P.3d 341, 345 (Utah Ct. App. 2004)).

[58]    *Daniels v. Gamma W. Brachytherapy, LLC*, 221 P.3d 256, 265-66 (Utah 2009) (even broad statute of limitations for medical malpractice, which is tolled until a plaintiff discovers the cause of its injury, can begin running before a plaintiff discovers the "responsible tortfeasor").

[59]    *Russell/Packard*, 108 P.3d at 746.

[60]    *Ortiz*, 867 F.2d at 148.

16

SKAT's non fraud based claims are not covered by a statutory discovery rule. The statute of limitations for these claims therefore began to run "upon the happening of the last event necessary to complete the cause of action" unless SKAT can show that the discovery rule applies due to exceptional circumstances or fraudulent concealment.[61]  For the fraudulent concealment doctrine to apply,  a plaintiff must show that "given the defendant's actions, the plaintiff acted reasonably in failing to file suit before the limitations period expired."[62]  Utah courts do not "necessarily require[] active concealment by the defendant after the plaintiff discovers the facts underlying the cause of action."[63]  "Weighing the reasonableness of the plaintiff's conduct in light of the defendant's steps to conceal the cause of action necessitates the type of factual findings which preclude judgment as a matter of law in all but the clearest of cases."[64]

SKAT alleges that defendants purported to own shares in Danish companies and submitted documentation from a broker-custodian that confirmed their ownership of these shares.[65] Given these alleged actions, SKAT's reasonableness in waiting to bring their claims against the New Defendants is a factual issue that cannot be decided on a motion to dismiss.

---

[61] *Russell/Packard*, 108 P.3d at 746-47.

[62] *Id*. at 748.

[63] *First Interstate Fin. LLC v. Savage*, 458 P.3d 1161, 1166 (Utah Ct. App. 2020).

[64] *Id*. (*quoting Berenda v. Langford*, 914 P.2d 45, 54 (Utah 1996)).

[65] AIG Am. Compl. ¶¶ 30, 59.

ii.    *Statute of Limitations in the Pennsylvania Action*

In Pennsylvania, the statute of limitation begins to run at the time of injury.[66] Nevertheless, "the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct."[67] "[W]hen a court is presented with the assertion of the discovery rule's application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause."[68]

"Pennsylvania's formulation of the discovery rule reflects a narrow approach to determining accrual for limitations purposes and places a greater burden upon Pennsylvania plaintiffs vis-á-vis the discovery rule than most other jurisdictions."[69] "The balance struck in Pennsylvania has been to impose a relatively limited notice requirement upon the plaintiff, but to submit factual questions regarding that notice to the jury as fact-finder."[70] Therefore, "the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause" is a factual determination and "ordinarily, a jury is to decide it."[71]

---

[66]    *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009).

[67]    *Id.* at 361-62.

[68]    *Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011) (*quoting Fine v. Checcio*, 870 A.2d 850, 858-59 (Pa. 2005)).

[69]    *Id.* at 484 (quotation marks omitted).

[70]    *Id.* at 485.

[71]    *Id.* (*quoting Fine*, 870 A.2d at 858-59).

By the summer of 2015, SKAT was aware that various entities had submitted fraudulent refund claims and knew that it had been injured by the payment of those claims. This required SKAT to exercise reasonable diligence. Yet, the question whether SKAT exercised reasonable diligence and what SKAT should have discovered is a question of fact that is reserved for the jury. The Court will not dismiss SKAT's amended complaints at this time based on the statute of limitations.

III.    *Failure to State a Claim*

Defendants move to dismiss SKAT's fraud based claims against the New Defendants as insufficiently pled. To survive a motion to dismiss, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face."[72] The Court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiffs' favor."[73] The Court, however, is not obliged to accept legal conclusions as true.[74] If a complaint alleges fraud, it must comply with Rule 9(b), which requires, among other things, that the plaintiff plead the circumstances constituting fraud with particularity, but allows "[m]alice, intent, knowledge, and other condition[s] of mind to be averred generally."[75]

---

[72]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[73]    *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).

[74]    *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

[75]    *Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1004 (2d Cir. 1988) (internal quotation marks omitted).

A.    *False Representations of Material Fact*

The New Individual Defendants Wittwer, Crema, and Kaminer argue that the amended complaints fail sufficiently to plead that they made any fraudulent statements.[76]   In response, SKAT argues that these defendants are liable for the plans' misrepresentations because they are the plans' *alter egos*.[77]  The Court already has concluded that SKAT has not pled sufficient facts to support an inference that Kaminer was the Kamco Plan's *alter ego*, and this conclusion applies here as well.

For the reasons previously explained, the Court holds that SKAT has alleged sufficiently that Crema controlled or dominated the AIG Plan. The Court's conclusion with regard to Wittwer is essentially the same.  SKAT claims that Wittwer was the sole participant in the DWC Plan and was an officer or employee of the DWC Plan's sponsor.[78]  The complaint alleges also that Wittwer's office address was listed on the DWC Plan's tax refund claims.[79]

But to support a claim of *alter ego* liability, SKAT must allege also that defendants used their control over the plans to commit fraud.[80]  With regard to Wittwer and Crema, SKAT

---

[76]    Def. Br. at 15-16.

[77]    Pl. Br. at 29.

[78]    DWC Am. Compl. ¶ 18.

[79]    *Id.* ¶ 47.

As with the other New Individual Defendants, it appears that Wittwer was also a trustee for the plan.  *See* Def. Reply Br. at 3; Blessington Declaration [18-cv-2865, DI 445], Exhibit B at 74.  Because SKAT has not raised this issue or explained the significance of this role, the Court declines to consider it.

[80]    *See Marine Midland Bankr*, 664 F.2d at 904.

alleges that they caused the plans to submit fraudulent tax refund applications to SKAT, as evidenced by the fact that their office addresses were listed in the plans' refund applications.[81] The Court concludes that the amended complaints allege sufficiently that Wittwer and Crema used the plans to defraud SKAT and obtain dividend tax refunds. Accordingly, SKAT's allegations, taken as true, support a plausible claim for *alter ego* liability.

B.    *Scienter*

The New Defendants argue also that SKAT's fraud based claims must be dismissed because SKAT has failed to plead *scienter* sufficiently.[82] The Court already rejected this argument with regard to other similarly situated defendants.[83] The New Defendants' argument likewise is without merit.

SKAT adequately can plead *scienter* either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[84] The Court previously held that SKAT pled facts supporting defendants' motive and opportunity by alleging the amount that defendants had received in payments from SKAT and describing each defendants' role in the

---

[81]    See e.g., AIG Am. Compl. ¶ 47.

[82]    Def. Br. at 16-17.

[83]    In re Skat Tax Refund Scheme Litig., 356 F. Supp. 3d at 323-24 & n. 120.

[84]    Id. (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)).

scheme.[85]  The Court concluded also that SKAT's allegations, assuming their truth, make out strong

circumstantial evidence of conscious misbehavior or recklessness because the plans purported to

own shares that were worth significantly more than the total value of the plans' assets.[86]

SKAT has met its burden under both tests for Acer.  *First*, the amended complaints

allege that Acer obtained fraudulent tax vouchers from ED&F on behalf of the pension plans and

received a percentage of the tax refunds paid to the plans.[87]  Acer's motive and opportunity to

facilitate the submission of the fraudulent tax refund claims therefore is pled adequately.  *Second*,

SKAT alleges that Acer selected which Danish securities to list on the plans' tax vouchers and

determined the number of shares to list for each security.[88]  If Acer intended to select securities

owned by the plans, the most plausible inference is that Acer was reckless in not confirming whether

the plans owned these shares.  If, on the other hand, Acer selected these securities without regard

to which shares the plans owned, this most likely reflects conscious misbehavior.  Either way, the

amended complaints allege strong circumstantial evidence of Acer's conscious misbehavior or

recklessness.

SKAT's allegations with regard to Crema and Wittwer are sufficient as well.  As

discussed above, SKAT's allegations permit an inference that Crema and Wittwer caused their

---

[85]     *Id.* at 324.

[86]     *Id.*

[87]     AIG Am. Compl. ¶ 62.

[88]     *Id.*

22

respective plans to submit the fraudulent refund applications to SKAT.[89] SKAT alleges also that each was a participant in a plan that received millions of dollars in tax refunds from SKAT.[90] Crema's and Wittwer's motive and opportunity to commit the fraud therefore is pled adequately.

*Conclusion*

The motion of Acer Investment Group, LLC, Darren Wittwer, Louise Kaminer, and Robert Crema to dismiss the amended complaints as to them (filed in 18-md-02865 [DI 392]; 18-cv-05053 [DI 197-1]; 18 cv-09797 [DI 168-1]; 18-cv-09836 [DI 112 1]; 18-cv-09837 [DI 110-1]; 18-cv-09838 [DI 105-1]; 18-cv-09839 [DI 111-1]; 18-cv-09840 [DI 111-1]; 18-cv-09841 [DI 114-1]; 18-cv-10100 [DI 161-1]) is granted to the extent that the claims against Louise Kaminer are dismissed. It is denied in all other respects.

SO ORDERED.

Dated:    December 2, 2020

_____

Lewis A. Kaplan
United States District Judge

---

[89]

    *Id.* ¶ 47.

[90]

    *Id.* ¶ 46.