## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:      18-cv-05053, 18-cv-09797, 18-cv-09836, 18-cv-09837, 18-cv-09838, 18-cv-09839, 18-cv-09840, 18-cv-09841, 18-cv-10100[1] | MASTER DOCKET<br><br>18-md-2865 (LAK) |

## THIRD-PARTY PLAINTIFFS ROBERT CREMA, DARREN WITTWER, AND ACER INVESTMENT GROUP, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO ED&F MAN CAPITAL MARKETS LTD.'S MOTION TO DISMISS

K&L Gates LLP
John C. Blessington
Brandon R. Dillman
Michael R. Creta
John L. Gavin
One Lincoln Street
Boston, MA  02111
617.261.3100

*Attorneys for Darren Wittwer, Robert Crema, and Acer Investment Group, LLC*

---

[1] The related actions include the following cases, which were pending in the District of Utah prior to transfer to this Court for pre-trial purposes: *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.); *SKAT v. Kamco Investments Inc. Pension Plan*, 18-cv-09836 (S.D.N.Y.); *SKAT v. Kamco LP Profit Sharing Pension Plan*, 18-cv-09837 (S.D.N.Y.); *SKAT v. Linden Associates Defined Benefit Plan*, 18-cv-09838 (S.D.N.Y.); *SKAT v. Moira Associates LLC 401K Plan*, 18-cv-09839 (S.D.N.Y.); *SKAT v. Riverside Associates Defined Benefit Plan*, 18-cv-09840 (S.D.N.Y.); and *SKAT v. American Investment Group of New York, L.P. Pension Plan*, 18-cv-09841 (S.D.N.Y.) (together, the "Utah Actions").  The related actions also include *SKAT v. Newsong Fellowship Church 401k Plan*, 18-cv-10100 (S.D.N.Y.), which was pending in the Eastern District of Pennsylvania prior to transfer to this Court for pre-trial purposes, and *SKAT v. The Goldstein Law Group PC 401k Profit Sharing Plan*, 18-cv-05053 (S.D.N.Y.), which was pending in the Southern District of New York prior to multi-district consolidation.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. ii

**PRELIMINARY STATEMENT** .........................................................................1

**BACKGROUND** ....................................................................................................3

**LEGAL STANDARD** ...........................................................................................7

**ARGUMENT** .........................................................................................................9

**I. ED&F is subject to specific personal jurisdiction.** ...............................9

    *a. ED&F has waived personal jurisdiction.* .......................................9

    *b. ED&F is subject to specific personal jurisdiction in Utah, Pennsylvania, and New York.* ......................................................................12

**II. The Third-Party Plaintiffs' claims are permitted by Rule 14.** .................17

    *a. Indemnification and Contribution claims are permitted under Rule 14.* .....................17

    *b. Fraud and Negligent Misrepresentation claims are permitted under Rule 14.* ............18

**III. The Third Party Plaintiffs' allegations state plausible claims for relief.** .................21

    *a. Acer, Crema, and Wittwer sufficiently pleaded Fraud (Count I).* ...............................21

    *b. Acer, Crema, and Wittwer sufficiently pleaded Negligent Misrepresentation (Count II).* ...............................24

    *c. Acer, Crema, and Wittwer sufficiently pleaded Equitable Indemnification (Acer Count III, Wittwer/Crema Count VI).* ............................25

    *d. Crema and Wittwer's other claims are sufficiently pleaded (Breach of Fiduciary Duty Count III, Unjust Enrichment Count V, Promissory Estoppel Count IV).* ...............................26

    *e. The Economic Loss Doctrine does not bar the claims.* ...................................30

    *f. Acer, Crema, and Wittwer sufficiently pleaded Apportionment of Fault (Acer Count IV, Wittwer/Crema Count VII).* ........................................33

**CONCLUSION** ...................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Hall*,
   148 P.3d 939 (Utah 2006) ................................................................................... 29, 30

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*,
   480 U.S. 102, 107 S. Ct. 1026 (1987) ........................................................................ 15

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) .......................................................................... 9

*Bank of India v. Trendi Sportswear, Inc.*,
   239 F.3d 428 (2d Cir. 2000) ......................................................................................... 8

*Baxter v. A.R. Baron & Co.*,
   No. 94 CIV. 3913 (JGK), 1996 WL 586338 (S.D.N.Y. Oct. 11, 1996) ..................... 23

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
   181 F.3d 435 (3d Cir.1999) ........................................................................................ 10

*Borgognone v. Partricia's Pizza and Pasta II, Inc.*,
   No. 10-CV-0841 (LAK), 2010 WL 4455820 (S.D.N.Y. Nov. 3, 2010) ..................... 20

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462, 105 S. Ct. 2174 (1985) .......................................................................... 7

*Carollo v. Cement & Concrete Workers Dist. Council Pension Plan*,
   964 F. Supp. 677 (E.D.N.Y. 1997) ............................................................................. 28

*Cascade Energy & Metals Corp. v. Banks*,
   896 F.2d 1557 (10th Cir. 1990) .................................................................................. 17

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) ..................................................................................... 8, 9

*Continental Bank, N.A. v. Meyer*,
   10 F.3d 1293 (7th Cir. 1993) ........................................................................................ 9

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v.*
   *Queen Carpet Corp.*,
   5 F. Supp. 2d 1246 (D. Utah 1998) ............................................................................. 33

*Cottonwood Imp. Dist. v. Qwest Corp.*,
   296 P.3d 754 (Utah Ct. App. 2013) ............................................................................ 28

*In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*,
   No. 18-CV-5053 (LAK), 2020 WL 70938, at *1 (S.D.N.Y. Jan. 7, 2020)........................16, 19

*In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*,
   No. 18-md-02865 (LAK), 2020 WL 3962066 (S.D.N.Y. July 13, 2020)..................................1

*DeMarco v. LaPay*,
   No. 2:09-CV-190 TS, 2012 WL 3597540 (D. Utah 2012) ................................................21, 31

*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*,
   786 P.2d 1326 (Utah 1990)...........................................................................................27, 32

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000).....................................................................................................8

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)....................................................................................................7

*Hamilton v. Atlas Turner, Inc.*,
   197 F.3d 58 (2d Cir. 1999).......................................................................................................9

*In re Houbigant, Inc.*,
   914 F. Supp. 964 (S.D.N.Y. 1995) .......................................................................................10

*Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*,
   No. 99-4042, 2000 WL 147392 (10th Cir. Feb. 4, 2000) ......................................................10

*Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*,
   866 F. Supp. 682 (E.D.N.Y. 1994) ..................................................................................18, 19

*Keller v. A.O. Smith Harvestore Prods., Inc.*,
   819 P.2d 69 (Colo. 1991)......................................................................................................31

*LaMarca v. Pak-Mor Mfg. Co.*,
   95 N.Y.2d 210 (2000) .....................................................................................................14, 15

*Layton Constr. Co. v. Wrapid Specialty, Inc.*,
   No. 2:14-CV-00402, 2015 WL 7312896 (D. Utah 2015)......................................................30

*Level 3 Commc'ns, LLC v. Liebert Corp.*,
   535 F.3d 1146 (10th Cir. 2008) ...........................................................................................31

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*,
   960 F.2d 1217 (3d Cir. 1992)................................................................................................13

*McMillan v. Equifax Credit Info. Servs., Inc.*,
   153 F. Supp. 2d 129, 132 (D. Conn. 2001)..................................................................20

*Metro. Life Ins. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..............................................................................................7

*MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*,
   886 F.2d 1249 (10th Cir. 1989) ....................................................................................27

*Mueller v. Long Island R.R. Co.*,
   No. 89-CV-7384, 1997 WL 189123 (S.D.N.Y. Apr. 17, 1997) ...................................19

*In re New York Asbestos Litig.*,
   149 F.R.D. 490 (S.D.N.Y. 1993) ..................................................................................19

*Old Republican Nat. Title Ins. Co. v. Home Abstract & Title Co.*,
   No. 1:12CV00171, 2014 WL 2918551 (D. Utah 2014) ................................................26

*Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*,
   355 P.3d 965 (Utah 2015)..............................................................................................27

*Outhouse PR, LLC v. Northstar Travel Media, LLC*,
   No. 19 Civ. 5979 (NRB), 2020 WL 2512092 (S.D.N.Y. May 15, 2020)........................8

*PaineWebber Inc. v. Chase Manhattan Private Bank (Switz.)*,
   260 F.3d 453 (5th Cir. 2001) .........................................................................................10

*Perry v. Pioneer Wholesale Supply Co.*,
   681 P.2d 214 (Utah 1984)..............................................................................................18

*Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*,
   No. 05-CV-64, 2006 WL 3840168 (D. Utah Dec. 21, 2006) ........................................18

*Preventative Energy Solutions, LLC v. nCap Ventures 5 LLC*,
   No. 16-CV-809-PMW, 2017 WL 87028 (D. Utah 2017) ..............................................30

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*,
   713 P.2d 55 (Utah 1986)................................................................................................25

*In re Refco Sec. Litig.*,
   759 F. Supp. 2d 301 (S.D.N.Y. 2010)............................................................................31

*Reiersen v. Smith*,
   No. 150900184, 2015 WL 11185811 (Utah Dist. Ct. June 17, 2015) ...........................18

*Salinero v. Johnson & Johnson, Inc.*,
   No. 18-CIV-23643-RAR, 2019 WL 2410076 (S.D. Fla. June 7, 2019) ........................10

*In re SKAT Tax Refund Scheme Litig.*,
No. 18-md-2865 (LAK), 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020)...............................7, 24

*State of N.Y. v. Solvent Chem. Co.*,
179 F.R.D. 90 (W.D.N.Y. 1998).....................................................................................8

*Steinbrugge v. Haddock*,
281 F.2d 871 (10th Cir. 1960) ........................................................................................27

*Tri-Ex Enterprises, Inc. v. Morgan Guar. Tr. Co. of N.Y.*,
586 F. Supp. 930 (S.D.N.Y. 1984) ..................................................................................17

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
210 F.3d 1207 (10th Cir. 2000), *aff'd*, 532 U.S. 588, 121 S. Ct. 1776, 149 L.
Ed. 2d 845 (2001) ...........................................................................................................32

*Walden v. Fiore*,
571 U.S. 277, 134 S. Ct. 1115 (2014)..............................................................................14

*Wandrey v. McCarthy*,
804 F. Supp. 1384 (D. Kan. 1992)....................................................................................17

*Winston & Strawn v. Dong Won Sec. Co.*,
No. 02-civ-0183, 2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002) ......................................7, 13

*Yeldell v. Tutt*,
913 F.2d 533 (8th Cir. 1990) ...........................................................................................10

**Statutes**

Utah Code Ann. § 78B–3–201(3) .............................................................................................13

N.Y. C.P.L.R. § 302(a) ............................................................................................................13

**Other Authorities**

6 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1451
(3d ed. Apr. 2021).....................................................................................................................17

Federal Rule of Civil Procedure 14 ............................................................................. *passim*

Federal Rule of Civil Procedure 12(b)(2) .................................................................................6, 7

Federal Rule of Civil Procedure Rule 12(b)(6).......................................................................6, 8, 25

Federal Rule of Civil Procedure Rule 12(h) ...........................................................................10

Third-Party Plaintiffs Robert Crema ("Crema"), Darren Wittwer ("Wittwer"), and Acer Investment Group, Inc. ("Acer," and collectively with Crema and Wittwer, the "Third-Party Plaintiffs") respectfully submit this memorandum of law in opposition to the motions to dismiss[2] Acer, Darren Wittwer, and Robert Crema's Third-Party Complaints ("Acer TPC," and Wittwer and Crema collectively as "Individuals' TPC") by Third-Party Defendant ED&F Man Capital Markets Ltd. ("ED&F") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 14.

## PRELIMINARY STATEMENT

The Third-Party Plaintiffs' allegations are straightforward: they are implicated in this multi-district litigation due to the actions of ED&F, and therefore if Third-Party Plaintiffs are found liable, ED&F should be held responsible.

Between 2012 and 2015, ED&F's business involved providing clients with securities services like dividend arbitrage investments. Acer acted as the authorized agent for nine pension plans (the "Plans")[3] in connection with Danish securities transactions conducted through ED&F. Crucial to these transactions, ED&F issued "Tax Vouchers" certifying the Plans' ownership of the securities on the relevant dividend's record date, receipt of the dividend net of withholding, and suffering of withheld taxes. These Tax Vouchers were critical to the Plans' withholding-tax refund requests that were submitted to SKAT. Indeed, without the Tax Vouchers, no refund request would be made and no refund would be issued. Third-Party Plaintiffs believed ED&F would only

---

[2] Third-Party Plaintiffs submit this single opposition in recognition of the Court's directive to streamline motion practice. *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-md-02865 (LAK), 2020 WL 3962066, at *2 n.10 (S.D.N.Y. July 13, 2020).

[3] The Plans relevant to these actions are DW Construction, Inc. Retirement Plan, Kamco Investments Inc. Pension Plan, Kamco LP Profit Sharing Pension Plan, Linden Associates Defined Benefit Plan, Moira Associates LLC 401K Plan, Riverside Associates Defined Benefit Plan, American Investment Group of New York, L.P. Pension Plan, Newsong Fellowship Church 401k Plan, and The Goldstein Law Group PC 401k Profit Sharing Plan.

generate accurate Tax Vouchers to support the Plans' refund requests, and they relied on the accuracy of those Tax Vouchers by engaging in dividend-arbitrage transactions through ED&F for many years.

In 2018, SKAT sued the Plans, among many others, and claimed that it should have never paid any of the Plans' refund requests because the information supporting the refund claims was wrong. In September 2019, years after the Tax Vouchers were first issued and over a year into this multi-district litigation, ED&F claimed for the first time that forty-two (42) of the seventy-two (72) Tax Vouchers contained false information (the "Disavowed Tax Vouchers"). It remains to be seen why ED&F reversed its Tax Voucher certifications with the Disavowed Tax Vouchers, but one thing is clear: If SKAT's theory is correct, then ED&F's Tax Vouchers (most notably the Disavowed Tax Vouchers) are the root cause of any inaccuracies in the Plans' tax refund requests that SKAT claims are false. In 2019, the Plans, among others, filed third-party complaints against ED&F. ED&F has since participated in this litigation by filing counterclaims, taking discovery of certain defendants and SKAT, and seeking this Court's assistance to compel certain discovery from SKAT. Thus, regardless of the outcome of ED&F's motions to dismiss, ED&F will remain a part of this litigation on those claims.

Now, as a result of SKAT's amending its complaints, Third-Party Plaintiffs have been drawn into this multi-district litigation, and Third-Party Plaintiffs also filed third-party claims against ED&F. Even though it has been participating in this litigation since 2019, ED&F now claims that it is not subject to personal jurisdiction here and argues that Third-Party Plaintiff have failed to state claims for relief. Despite these assertions, ED&F has subjected itself to this Court's jurisdiction through its conduct at issue in this matter and through its active participation in these related actions. Moreover, the Third-Party Plaintiffs have sufficiently pleaded their claims against

ED&F and appropriately relied on Rule 14 to raise their claims. ED&F's motions to dismiss should accordingly be denied.

## **BACKGROUND**

ED&F is a broker registered to conduct business with the Financial Conduct Authority, which regulates the UK financial and securities markets. Acer TPC ¶ 5; Individuals' TPC[4] ¶ 8. In 2012, the Plans executed custody agreements (the "Custody Agreements") that set forth ED&F's obligations as broker-custodian for each of the Plans. Acer TPC ¶ 6; Individuals' TPC ¶ 9. These Plans included the DW Construction, Inc. Retirement Plan (the "DWC Plan") and American Investment Group of New York, L.P. Pension Plan (the "AIG Plan") — pension plans of which Darren Wittwer and Robert Crema were trustees and sole participants, respectively. Individuals' TPC ¶ 1, 99; *see also* Individuals' TPC Ex. A. Pursuant to the Custody Agreements, the Plans maintained brokerage accounts with ED&F. Acer TPC ¶ 7; Individuals' TPC ¶ 12. ED&F was required to exercise reasonable care when, among other things, trading securities for the Plans, managing the Plans' custodian and sub-custodian accounts, keeping records and statements concerning the Plans' accounts and securities, and crediting all income, dividends, and other proceeds on the Plans' securities only after actual receipt and reconciliation. Accordingly, ED&F was prohibited from, among other things, falsifying account statements, buy/sell confirmations, dividend receipts, tax vouchers, or other documentation in relation to the Plans' securities holdings and brokerage accounts. Acer TPC ¶¶ 8-9; Individuals' TPC ¶¶ 13-14.

---

[4] Citations to "Individuals' TPC" is to the Third-Party Complaint and Jury Demand filed by Third-Party Plaintiff Darren Wittwer on January 29, 2021 (Doc. No. 528). The Third-Party Complaint and Jury Demand filed by Third-Party Plaintiff Robert Crema is largely duplicative in all material respects.

Acer is a limited liability company, operating out of Utah, that was designated as attorney-in-fact for the Plans in connection with the investments in U.S. and foreign securities transactions conducted through the Plans' ED&F brokerage accounts. Acer TPC ¶ 10; Individuals' TPC ¶¶ 11, 15. ED&F agreed to communicate with the Plans through Acer regarding ED&F's dealing with the Plans, and did so through Acer's Utah office. Acer TPC ¶ 11; Individuals' TPC ¶¶ 15, 16. Between December 2013 and August 2015, the Plans traded in shares of Danish companies through ED&F. Acer TPC ¶ 11; Individuals' TPC ¶ 20. Pursuant to the U.S.-Denmark Tax Treaty, U.S. pension plans such as the Plans that suffered a withholding tax on dividends were entitled to reclaim that withheld tax from the Danish government. Acer TPC ¶ 13; Individuals' TPC ¶ 18.

As a result of the Plans' Danish trades through ED&F, ED&F generated numerous documents detailing and describing the transactions, including buy/sell confirmations for the Plans' transactions, account statements showing that the transactions occurred, and Tax Vouchers describing the Plans' security holdings and receipt of dividends net of withholding taxes. Acer TPC ¶ 16; Individuals' TPC ¶ 21. ED&F provided these documents to Acer, who was acting as the Plans' authorized agent. Acer TPC ¶ 17; Individuals' TPC ¶ 22. ED&F also sent the Tax Vouchers directly to Goal Taxback Ltd. ("Goal Taxback"), a processing agent, who ED&F knew would then submit those applications to SKAT on behalf of the Plans. Acer TPC ¶¶ 23-24; Individuals' TPC ¶¶ 28-29. ED&F prepared all of the Tax Vouchers that were submitted to SKAT for withholding tax reclaims. Acer TPC ¶ 45; *see* Individuals' TPC Ex. B. Each Tax Voucher created by ED&F stated specifically where the relevant Plan was located, including addresses in Utah, Pennsylvania, and New York. *See* Acer TPC Ex. A.

At all times, ED&F had exclusive direct control over the Plans' brokerage accounts. Acer TPC ¶ 29; Individuals' TPC ¶¶ 25, 34-35. ED&F provided account statements reflecting all Danish

securities transactions in the ED&F brokerage accounts to the Plans through Acer at its Utah office. Acer TPC ¶ 31; Individuals' TPC ¶ 37.  Third-Party Plaintiffs reasonably relied on the Tax Vouchers and other information provided by ED&F when requesting the withholding-tax refunds from SKAT, and in continuing to conduct trades for the Plans through ED&F in 2014 and 2015. Acer TPC ¶ 32; Individuals' TPC ¶ 38.

In 2018, SKAT sued the Plans and certain individual defendants seeking damages and/or restitution for the withholding-tax refunds SKAT paid to the Plans.  Acer TPC ¶ 40; Individuals' TPC ¶ 40.  In 2020, SKAT sued Acer, Wittwer, and Crema as co-defendants in each of the actions, alleging that they had aided and abetted the Plans' purported fraud against SKAT.  Acer TPC ¶ 41; Individuals' TPC ¶ 46.  SKAT also sued ED&F in the United Kingdom (the "U.K. Proceeding") related to these same transactions.  Acer TPC ¶ 43; Individuals' TPC ¶ 47.  In the U.K. Proceeding, ED&F stated that forty-two of the seventy-two tax vouchers it prepared for the Plans contained false information.[5]  Acer TPC ¶ 45.  Had ED&F not created these Disavowed Tax Vouchers with inaccurate information, the Plans would never have submitted the refund applications to SKAT, causing the Third-Party Plaintiffs' involvement in this suit.  Acer TPC ¶ 58; Individuals' TPC ¶ 54.

After SKAT sued the Plans in 2018, the Plans and the individual defendants filed third-party complaints against ED&F.  They alleged that if SKAT is correct in its allegations that the Plans never owned the securities they claimed to own and never received the dividends they

---

[5] According to ED&F's "Annex E," five of the seven Tax Vouchers that ED&F created for Third-Party Plaintiff Darren Wittwer and four of the eleven Tax Vouchers that ED&F created for Third-Party Plaintiff Robert Crema contain inaccurate information.  *Compare* Individuals' TPC Ex. B *with* Individuals' TPC Ex. C.

claimed to receive, ED&F should be responsible.[6]  Since then, ED&F moved to dismiss the third-party complaint in related-action 18-cv-05053, arguing that ED&F was not subject to the Court's jurisdiction and for failure to state a claim.[7]   The Court denied that motion, and ED&F answered the other third-party complaints filed in the Utah and Pennsylvania actions.[8]  Since then, ED&F filed and amended counterclaims demanding indemnification from the Plans (claims that were swiftly dismissed);[9] noticed depositions of and/or deposed certain third-party plaintiffs;[10] noticed the depositions of certain representatives of Plaintiff SKAT;[11] served document requests on SKAT on March 23, 2020;[12] exchanged letters and met-and-conferred with SKAT "on several occasions" regarding a discovery dispute with SKAT and even sought this Court's assistance to compel SKAT's search for and production of certain documents relating to the merits of SKAT's claims and ED&F's defenses unrelated to personal jurisdiction.[13]

ED&F now asks this Court to dismiss the claims of Third-Party Plaintiffs based on Rule 12(b)(2) (lack of personal jurisdiction), Rule 14 (improper impleader), and Rule 12(b)(6) (failure to state a claim).

---

[6] *See, e.g.*, Third-Party Complaint of [the DWC Plan] and Stacey Kaminer in Related Action 18-cv-09797, Doc. No. 173.

[7] ED&F's Motion to Dismiss, filed in Related Action 18-cv-05053, Doc. No. 239.

[8] Memorandum Opinion, Doc. No. 255 (dismissing ED&F's Motion to Dismiss in Related Action 18-cv-05053).

[9] ED&F's Amended Counterclaims, Doc. Nos. 323, 324, and 325; *see* Memorandum Opinion, Doc. No. 400.

[10] Dillman Decl. ¶¶ 4–11; Exs. A–H.

[11] Dillman Decl.; Exs. I, J.

[12] Dillman Dec. Ex. K (ED&F's Letter Motion Compel SKAT to Produce Documents, attached SKAT's Responses and Objections, Doc. No. 351).

[13] *Id.*; Dillman Dec. Ex. L (Letter Motion for Leave to File Supplemental Exhibits filed by ED&F, Doc. No. 354).

## LEGAL STANDARD

In order to survive a Rule 12(b)(2) motion, the complaining party need only make a prima facie showing of jurisdiction. *See, e.g., Metro. Life Ins. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citation omitted); *see also* Fed. R. Civ. P. 12(b)(2). In a diversity action, the amenability of a foreign corporation to suit in federal court is determined by the law of the forum state. *Metro. Life Ins. Co.*, 84 F.3d at 567. "In multidistrict litigation . . . personal jurisdiction must be proper in the forum from which each complaint was transferred." *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2020 WL 7059843, at *2 (S.D.N.Y. Dec. 2, 2020). In assessing whether jurisdiction is proper, a court must look first to the forum state's long-arm statute, and if the exercise of jurisdiction is appropriate under that statute, it must decide whether such exercise comports with due process. *Winston & Strawn v. Dong Won Sec. Co.*, No. 02-civ-0183, 2002 WL 31444625, at *3 (S.D.N.Y. Nov. 1, 2002).

Federal due process requires that "before a court may exercise jurisdiction over a person or an organization . . . that person or entity must have sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts may exercise specific jurisdiction over defendants that "purposefully derive benefit from their interstate activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74, 105 S. Ct. 2174, 2183 (1985) (quotation marks omitted). For this reason, jurisdiction is proper where a defendant "has created continuing obligations between himself and residents of the forum" and "manifestly has availed himself of the privilege of conducting business there." *Burger King Corp.*, 471 U.S. at 476, 105 S. Ct. at 2184 (internal quotation omitted).

However, "[p]ersonal jurisdiction, unlike subject-matter jurisdiction, can . . . be purposely waived or inadvertently forfeited." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011). "A court will obtain, through implied consent, personal jurisdiction over a defendant if [t]he actions of the defendant [during the litigation] ... amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id.* at 134 (internal quotations omitted).

Relevant to ED&F's Rule 14 arguments, Federal Rule of Civil Procedure Rule 14(a)(1) provides in relevant part "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Joinder under Rule 14(a) should be "freely granted to promote . . . efficiency." *State of N.Y. v. Solvent Chem. Co.*, 179 F.R.D. 90, 93 (W.D.N.Y. 1998). To sustain an impleader, the third-party defendant "must be liable secondarily to the original defendant, or . . . the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery, or . . . the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant." *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000). The "impleader action must be dependent on, or derivative of, the main or third-party claim." *Id.* at 438.

Finally, on a Rule 12(b)(6) motion, all of the complaint's factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor, *see Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000), including "inferences from the acts alleged that defeat any affirmative defense asserted by the defendant." *Outhouse PR, LLC v. Northstar Travel Media, LLC*, No. 19 Civ. 5979 (NRB), 2020 WL 2512092, at *4 (S.D.N.Y. May 15, 2020). A complaint should not be dismissed if it contains sufficient factual allegations that, accepted as true, state a

claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 669, 129 S. Ct. 1937, 1944 (2009).

## ARGUMENT

**I.    ED&F is subject to specific personal jurisdiction.**

ED&F's assertion that it is not subject to personal jurisdiction is undermined by its own conduct since initially being named as a third-party defendant in the above-captioned related actions (the "Related Actions"), as well as its conduct during its relationship with the Plans and Third-Party Plaintiffs.

> *a.    ED&F has waived personal jurisdiction.*

A court must consider "all relevant circumstances" in "determining whether waiver or forfeiture of objections to personal jurisdiction has occurred."  *City of New York*, 645 F.3d at 133. Specifically, a defendant's "actions . . . during the litigation [can] amount to a legal submission to the jurisdiction of the court."  *Id.* at 134 (internal alterations omitted).  Additionally, challenges to personal jurisdiction can be waived where a defendant participates in "considerable pretrial activity" including "merits discovery" and depositions.  *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (personal jurisdiction defense forfeited, even when asserted in a timely answer, where defendant did not first move to dismiss and where "considerable pre-trial activity occurred," including a deposition and other merits discovery); *see Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (personal jurisdiction defense lost where defendants "participated in lengthy discovery, filed various motions and opposed a number of motions" and "fully participated in litigation of the merits for over two-and-a-half years without actively

contesting personal jurisdiction").[14]   Importantly, "appearing and seeking affirmative relief from the Court [in the form of a counterclaim] is the paradigm of such a waiver" of personal jurisdiction. *In re Houbigant, Inc.*, 914 F. Supp. 964, 979-80 (S.D.N.Y. 1995).   Where a party attempts to assert claims that "need not have been raised in th[e] action," that party waives the potential defense of personal jurisdiction.  *See id.*

Considering all relevant circumstances, ED&F has waived personal jurisdiction because it legally submitted itself to the Court as to the other related claims in these jurisdictions.  ED&F has been named as a third-party defendant in the Related Actions based in Utah, New York, and Pennsylvania since August 2019 (and in the case of New York, since April 2019).  ED&F has not once attempted to challenge personal jurisdiction with respect to the Related Actions in Utah and Pennsylvania, and the Court already denied ED&F's jurisdictional challenge in New York.  Doc.

---

[14] Waiver of personal jurisdiction is typical practice in the 2nd, 3rd, 5th, 7th, 8th, 10th, and 11th Circuits, most notably where the defendant has waited before challenging personal jurisdiction in a motion, has already answered complaints, and has engaged in offensive discovery including noticing and taking depositions.  *See Bel-Ray Co. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 443 (3d Cir. 1999) (stating that "where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter"); *PaineWebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453, 459 (5th Cir. 2001) (acknowledging the "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections"); *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (acknowledging defendant "literally complied with Rule 12(h) by including the jurisdictional issue in their answer" but finding waiver of personal jurisdiction because defendant participated in discovery, among other actions, and therefore failed to "comply with the spirit of the rule, which is 'to expedite and simplify proceedings in the Federal Courts'") (citations omitted); *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, No. 99-4042, 2000 WL 147392, *3 (10th Cir. Feb. 4, 2000) (defendant waived personal jurisdiction defense by waiting more than three years to file motion to dismiss on that basis, after first timely raising the defense in its answer); *Salinero v. Johnson & Johnson, Inc.*, No. 18-CIV-23643-RAR, 2019 WL 2410076, at *1 (S.D. Fla. June 7, 2019) (finding personal jurisdiction waived where defendant waited six months after receiving notice of amended complaint to file motion, scheduled numerous depositions, agreed to joint stipulations, and otherwise "actively participated in litigation").

No. 255.  Rather than immediately challenge personal jurisdiction in all of the Related Actions,

ED&F:

- Answered the Amended Third-Party Complaints in all of the Related Actions;[15]

- Filed Counterclaims in all of the Related Actions against the Plans demanding indemnification and other relief from the Court;[16]

- Amended its counterclaims in response to motions to dismiss;[17]

- Noticed the depositions of Third-Party Plaintiff Crema and Stacey Kaminer (both of whom are LLC members of Third-Party Plaintiff Acer) prior to ED&F moving to dismiss Acer's Third-Party Complaint and Crema's Third-Party Complaint;[18]

- Deposed Third-Party Plaintiff Crema and marked his Third-Party Complaint as an exhibit during that deposition prior to ED&F moving to dismiss Crema's Third-Party Complaint;[19]

- Noticed the deposition of Third-Party Plaintiff Wittwer prior to ED&F moving to dismiss Wittwer's Third-Party Complaint;[20]

- Deposed Stacey Kaminer (principal of Acer and a defendant/third-party plaintiff in Related Actions 18-cv-09797, 18-cv-09836, 18-cv-09837, 18-cv-09839, and 18-cv-09841) four days after ED&F moved to dismiss Acer's Third-Party Complaint;[21]

- Deposed David Schulman (defendant/third-party plaintiff in 18-cv-09840), and Joan Schulman (defendant/third-party plaintiff in 18-cv-09838), and Louise Kaminer (former defendant in 18-cv-09836);[22]

---

[15] ED&F's Answers to Third-Party Complaints dated March 2, 2020, filed in the Related Actions, Doc. Nos. 280, 281, 282.

[16] *Id.*

[17] ED&F's Amended Counterclaims, Doc. Nos. 323, 324, and 325; *see also* Memorandum Opinion, Doc. No. 400 (dismissing ED&F's Amended Counterclaims and noting that the counterclaims were "unfit for adjudication at this time because they turn entirely on contingent future events.").

[18] Dillman Decl. ¶¶ 10, 11; Ex. G (ED&F noticing Third-Party Plaintiff Crema's deposition on January 20, 2021); Ex. H. (ED&F noticing Stacey Kaminer's deposition on April 14, 2021). ED&F deposed Mr. Crema on February 9, 2021.  Dillman Decl. ¶¶ 10, 11.  ED&F's pending motions to dismiss were filed on April 15, 2021.  *See* Doc. Nos. 573 and 575.

[19] Dillman Decl. ¶ 10; Ex. G.

[20] Dillman Decl. Ex. F (dated April 14, 2021).

[21] Dillman Decl. ¶ 11 ("ED&F deposed Stacey Kaminer on April 20, 2021."); Ex. H.

[22] Dillman Decl. Exs. A–C.

- Noticed the deposition of and deposed Sheldon Goldstein (defendant/third-party plaintiff in 18-cv-05053);[23] and

- Noticed the deposition of Scott Goldstein (defendant/third-party plaintiff in 18-cv-05053).[24]

Even more critically, ED&F engaged in direct discovery with SKAT in March 2020 *promptly* after ED&F first filed its answers and counterclaims in the Related Actions. On March 23, 2020, ED&F served document requests on SKAT completely unrelated to any issues related to ED&F's belated personal jurisdiction challenges regarding any of the Related Actions.[25] ED&F subsequently exchanged letters and met-and-conferred with SKAT "on several occasions" regarding those discovery requests and even sought this Court's assistance in regards to SKAT's responses to those requests.[26] Even after filing the present motions to dismiss, ED&F noticed the depositions of representatives of Plaintiff SKAT.[27]

Given its conduct, ED&F cannot now assert that it is not subject to personal jurisdiction in the same actions in which it has already been an aggressive litigant for two years and has already conducted extensive merits discovery.[28] Rather, ED&F's actions amount to a legal submission in each of the Related Actions and therefore, it has waived any personal jurisdiction arguments in Utah, New York, and Pennsylvania.

---

[23] Dillman Decl. ¶ 8, Ex. E.

[24] Dillman Decl., Ex. D.

[25] *See* Dillman Dec. Ex. K, at Exhibit A (e.g., requesting from SKAT "All documents or communications concerning early warnings submitted to the Danish Ministry of Taxation on the subject of WHT refunds from 2002 onwards.").

[26] *Id.*; *see also* Dillman Dec. Ex. L (Letter Motion for Leave to File Supplemental Exhibits filed by ED&F, Doc. No. 354).

[27] *See* Dillman Decl. Exs. I, J.

[28] *See, e.g.*, Dillman Dec. Ex. K (ED&F's Letter Motion to Compel SKAT to Produce Documents, attached SKAT's Responses and Objections, Doc. No. 351).

b. *ED&F is subject to specific personal jurisdiction in Utah, Pennsylvania, and New York.*

Notwithstanding ED&F's waiver of personal jurisdiction, ED&F is subject to specific personal jurisdiction in Utah, Pennsylvania, and New York because ED&F purposefully availed itself to the benefits of each state through its minimum contacts.  In assessing whether jurisdiction is proper, a court must look first to the forum state's long-arm statute, and if the exercise of jurisdiction is appropriate under that statute, it must decide whether such exercise comports with due process.  *Winston & Strawn*, 2002 WL 31444625, at *3.

Both Utah and Pennsylvania's long-arm statutes allow jurisdiction over a nonresident defendant to the fullest extent permitted by the due process clause of the Fourteenth Amendment. Utah Code Ann. § 78B–3–201(3); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).  The New York long-arm statute provides that specific jurisdiction may be exercised over a foreign entity who "commits a tortious act within the state" or "commits a tortious act without the state causing injury to person or property within the state . . . if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a).  ED&F's conduct falls within the New York long-arm statute because (1) ED&F committed a tort outside the state by creating, at least, the Disavowed Tax Vouchers, (2) caused injury in New York, (3) ED&F should have reasonably expected that the creation of fraudulent Tax Vouchers on behalf of a New York-based pension plan with a New York bank account would cause injury in New York, and (4) ED&F derived substantial revenue from international commerce - namely its relationship with the Plans. *See* Memorandum Opinion, Doc. No. 255, p. 3 ("By engaging in a long-term business relationship with a New York entity, ED&F Man purposefully availed itself of the benefits of doing business in New York. And by withdrawing . . . money from a New York brokerage account, using it in

-13-

ways allegedly injurious to a New York entity . . . , returning the money and any earnings and proceeds to that account, and charging [a New York entity] fees for this work, ED&F Man repeatedly reached into New York in the course of doing business . . . .  As [the] claims arise out of these purposeful contacts with New York, and asserting jurisdiction under these circumstances would comport with traditional notions of fair play and substantial justice, the Court has specific personal jurisdiction over ED&F Man.")

Exercising jurisdiction over ED&F in Utah, New York, and Pennsylvania would also comport with due process.  Due process requires that (1) the defendant have "minimum contacts" with the forum such that it should "reasonably anticipate being haled into court there" and (2) defending the suit in the forum would comport with "traditional notions of fair play and substantial justice."  *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121 (2014) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A non-domiciliary tortfeasor "has minimum contacts with the forum State—and may thus reasonably foresee the prospect of defending a suit there—if it purposefully avails itself of the privilege of conducting activities within the forum State."  *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 216 (2000) (internal quotations omitted).

ED&F has sufficient minimum contacts with all three jurisdictions.  First, ED&F's relevant conduct was purposefully directed towards Utah, New York, and Pennsylvania.  ED&F conducted financial transactions with the Plans directly or through Acer, who primarily operated out of Utah.  Individuals' TPC ¶ 5.  Second, at all relevant times, ED&F was aware that Acer was operating out of Utah, and regularly provided all documents, including those relating to the Plan's holding of shares in Danish companies and tax vouchers, to the Plans through Acer in Utah.  Acer TPC ¶¶ 17-18.  And third, ED&F would email copies of all of the Tax Vouchers to Acer, as the agent for

-14-

each of the Plans.  Acer TPC ¶¶ 10, 25.  Engaging in this conduct, ED&F was purposefully availing itself to the protections of Utah.

Furthermore, by providing financial services for the Plans that were based in Utah, New York, and Pennsylvania, it would be foreseeable to ED&F that it could be haled into court in those jurisdictions from any injuries resulting from its services.  ED&F would have been aware at all times that the Plans were based in Utah, New York, and Pennsylvania (except for the AIG Plan, which was based in New Jersey and, later, Florida).  Acer TPC ¶ 6.  ED&F would have further been aware that any wrongful conduct by it, including the creation of misleading Tax Vouchers, would cause injury to the Plans and/or the Plan's sole participants.  Indeed, Wittwer, the sole participant of the DWC Plan resides in Utah.  Individuals' TPC, ¶ 1.  As for Crema, ED&F conducted financial transactions for the AIG Plan by working directly with the AIG Plan's agent, Acer, in Utah.  Crema TPC, ¶ 5.  Therefore, ED&F has sufficient minimum contacts to warrant this Court's exercise of specific personal jurisdiction in Utah, New York, and Pennsylvania.

If minimum contacts exist, the burden shifts to ED&F to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *LaMarca*, 735 N.E.2d at 883.  The Supreme Court has set forth five relevant factors to determine whether the exercise of jurisdiction would be unreasonable: the (1) burden on the defendant, (2) interests of the forum state, (3) plaintiff's interest in obtaining relief, (4) interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) shared interest of several states in furthering substantive social policies.  *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987).  ED&F has failed to demonstrate that any of these factors would render jurisdiction unreasonable.  The burden on ED&F to litigate the Third-Party Plaintiffs' claims in Utah, New York, and Pennsylvania is minimal because it is

already litigating other substantially similar claims relating to the very same Plans and transactions in each of those forums. Moreover, ED&F has engaged in fact discovery with SKAT on issues unrelated to issues of personal jurisdiction.[29] In these circumstances, it would be fair for ED&F to be judicially answerable for its actions related to Third-Party Plaintiffs in these forums.

Additionally, both the forum states and the interstate judicial system have an interest in exercising jurisdiction over ED&F. As this Court has previously noted, "[t]he United States has an interest, expressed in the multidistrict litigation transfer statute, in resolving efficiently (and often in a single forum) factually related proceedings over which it has jurisdiction. And requiring [third-party plaintiff] to litigate its claims, asserted here in its third-party complaint, in a foreign court would risk complicating these consolidated proceedings and generating conflicting findings on the question of [third-party plaintiff's] liability to SKAT. These outcomes would undermine the public interest in the efficient resolution of [third-party plaintiff's] claims, SKAT's claims, and perhaps even some of the many other claims raised throughout this multidistrict litigation." *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-CV-5053 (LAK), 2020 WL 70938, at *5 (S.D.N.Y. Jan. 7, 2020). The same public interest exists with respect to the Third-Party Plaintiffs' claims against ED&F, and necessitate a finding that personal jurisdiction over ED&F in these forums complies with "traditional notions of fair play and substantial justice."

---

[29] *See* Dillman Dec. Exs. K & L.

-16-

## II.    The Third-Party Plaintiffs' claims are permitted by Rule 14.

ED&F's request that this Court dismiss the Third-Party Plaintiffs' claims as unauthorized under Rule 14 is unsupported by Rule 14, Rule 14's purpose, and Rule 14 precedent.  Rather, ED&F relies on Utah *state court* cases and attempts to extrapolate unsupported rules from factually distinct cases.  Contrary to ED&F's assertions, the Third-Party Plaintiffs' claims are allowed under Rule 14, and should not be dismissed.

### a.    Indemnification and Contribution claims are permitted under Rule 14.

Third-Party Plaintiffs' indemnification and contribution claims are precisely the types of claims that Federal Rule of Civil Procedure Rule 14 is intended to allow.  Rule 14 states, in relevant part, that a third-party plaintiff may "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  FED. R. CIV. P. 14.  A "claim for contribution may be brought under Rule 14 at the same time the original claim is being litigated."  *Tri-Ex Enterprises, Inc. v. Morgan Guar. Tr. Co. of N.Y.*, 586 F. Supp. 930, 933 (S.D.N.Y. 1984); *see* 6 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1451 (3d ed. Apr. 2021) ("if state law recognizes a substantive right of action but merely fails to provide a procedural device for the acceleration or concurrent determination of the liability as part of the principal lawsuit, impleader under Rule 14 still will be allowed").

Under Rule 14, "a defendant does not have to wait until he has paid a judgment to seek indemnity or contribution from other parties who are jointly liable to the plaintiff."  *Wandrey v. McCarthy*, 804 F. Supp. 1384, 1386 (D. Kan. 1992).   In diversity actions, although state substantive law applies, procedure "is governed by the Federal Rules of Civil Procedure, not [state] procedural law."  *Id.* at 1387 (denying third-party's motion to dismiss arguing that third-party plaintiff's indemnity and contribution claims were premature).  Additionally, federal courts in Utah regularly allow third-party claims without a prior finding of liability.  *See, e.g.*, *Cascade*

*Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1566 (10th Cir. 1990) (discussing Utah district court's allowance of third-party claims prior to adjudication of defendant's liability to plaintiff); *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, No. 05-CV-64, 2006 WL 3840168, at *1 (D. Utah Dec. 21, 2006) (allowing third-party claims to be asserted prior to adjudication of plaintiff's underlying claims against the defendant).

ED&F's position that the Third-Party Plaintiffs' claims cannot be heard until liability is determined is based on incomparable case law and would undermine the purpose of Rule 14. Specifically, the two cases that ED&F cites did not involve claims brought under Rule 14, but rather involved claims brought as independent state claims in state court. *See Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984); *Reiersen v. Smith*, No. 150900184, 2015 WL 11185811, at *1 (Utah Dist. Ct. June 17, 2015). Those cases say nothing about the ability of defendants in federal cases to assert third-party claims pursuant to the Federal Rule of Civil Procedure 14 against "a nonparty who is or ***may be liable*** to it for all or part of the claim against it." Fed. R. Civ. P. 14 (emphasis added). Therefore, because Utah recognizes these claims as a substantive right and Third-Party Plaintiffs merely seek a concurrent determination of liability of the principal lawsuit brought by SKAT, these claims are proper under Rule 14.

> *b.   Fraud and Negligent Misrepresentation claims are permitted under Rule 14.*

Third-Party Plaintiffs' fraud and negligent misrepresentation claims are also permitted under Rule 14 because they are derivative of and dependent on SKAT's claims against the Third-Party Plaintiffs. An impleader action under Rule 14 "requires that there be some sort of derivativeness or nexus between the primary liability . . . and the basis for the attempt to assign third party liability." *Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*, 866 F. Supp. 682, 687 (E.D.N.Y. 1994). There is no requirement that "such derivativeness must take the form of an indemnity or

contribution claim." *Int'l Paving Sys., Inc.,* 866 F. Supp. at 687. Third-Party Plaintiffs' claims are clearly derivative and dependent on SKAT's action against Third-Party Plaintiffs. Third-Party Plaintiffs' allege that ED&F is liable for fraud and negligent misrepresentation *only if* Third-Party Plaintiffs' are found liable to SKAT. Any liability of ED&F on these claims stems directly from the facts and outcome of SKAT's claims against Third-Party Plaintiffs.

Third-Party Plaintiffs' claims also comply with the purpose of Rule 14. Rule 14(a) is "designed to prevent the courts from trying several related cases in different lawsuits and to enable all related claims to be disposed of in one action." *In re New York Asbestos Litig.*, 149 F.R.D. 490, 500 (S.D.N.Y. 1993). The general purpose of Rule 14(a) "is to serve judicial economy, discourage inconsistent results, and limit the prejudice incurred by a defendant by removal of the time lag between a judgment against the defendant and a judgment over against a third-party defendant." *Int'l Paving Sys., Inc.*, 866 F. Supp. at 686. Not only are Third-Party Plaintiffs' claims proper under Rule 14 as derivative and dependent claims, but they also promote judicial efficiency. This Court has previously held that "[the] third-party complaint [in 18-cv-05053] functions like a claim for indemnity, as its premise is that if [third-party plaintiff] is liable to SKAT, then ED&F Man is liable to [third-party plaintiff]. In this sense, the need to adjudicate the third-party claims—and the factual findings that would underlie such adjudication—depends upon the resolution of SKAT's claims." *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2020 WL 70938, at *4. Allowing ED&F to splinter off these causes of action and force the Third-Party Plaintiffs to adjudicate them in a separate action would be contrary to the logic of Rule 14. *See Mueller v. Long Island R.R. Co.*, No. 89-CV-7384, 1997 WL 189123, at *6 (S.D.N.Y. Apr. 17, 1997) (noting that the purpose of the Rule is to "promote judicial efficiency by allowing the adjudication of several claims in one action").

Furthermore, ED&F's supposed support for its argument that the Third-Party Plaintiffs' claims are improper under Rule 14 is founded on easily distinguishable cases. For example, ED&F relies upon *Borgognone v. Partricia's Pizza and Pasta II, Inc.*; however, the third-party plaintiffs in *Borgognone* did not seek to impute liability upon the third-party defendants, but instead sought a damages award separate and apart for any liability adjudicated against them. No. 10-CV-0841 (LAK), 2010 WL 4455820, *3 (S.D.N.Y. Nov. 3, 2010) ("the claims for fraud . . . do not rest on any assertion that [the third-party defendant] is or may be liable to the defendants for any liability they may have to the plaintiffs on the first-party complaint"). *Borgognone* stands only for the proposition that independent fraud claims seeking separate damages cannot be asserted under Rule 14. Here, the Third-Party Plaintiffs attempt no such thing. Rather, they are asserting these claims under Rule 14 because if they are liable to SKAT, it is because of ED&F's fraud and negligent misrepresentation. *See, e.g.*, Acer TPC ¶ 87 ("If SKAT is entitled to the amounts it claims to be owed, then ED&F should be liable…").

ED&F also relies upon *McMillan v. Equifax Credit Info. Servs., Inc.*, for the proposition that claims of negligent misrepresentation lack sufficient nexus to the underlying claims to be proper under Rule 14. 153 F. Supp. 2d 129, 132 (D. Conn. 2001). However, *McMillan* involved a factual determination that, in that case, the "'but for' causal connection is too speculative to permit impleader of the [proposed third-party defendant] for negligent misrepresentation under Rule 14." *Id.* at 132. *McMillan* did not find that intentional and negligent misrepresentation claims *per se* lack sufficient nexus to underlying claims under Rule 14. *See id.* at 132-33. Unlike in *McMillan*, the "but for" causal connection between the Third-Party Plaintiff's negligent misrepresentation claims and SKAT's underlying claims is anything but speculative. Here, ED&F made material, factual statements in the Tax Vouchers, which the Third-Party Plaintiffs relied on

to support their refund requests that were submitted to SKAT.  These representations by ED&F have a direct nexus to any liability that Third-Party Plaintiffs would face if SKAT is entitled to the amounts it claims to be owed as a result of those Tax Vouchers provided by ED&F—particularly with respect to the Disavowed Tax Vouchers that ED&F has now decided were false.

### III.    The Third Party Plaintiffs' allegations state plausible claims for relief.

ED&F's motion to dismiss for failure to state a claim should be denied because Third-Party Plaintiffs have sufficiently pled each of the claims in their Third-Party Complaints.

#### a.  Acer, Crema, and Wittwer sufficiently pleaded Fraud (Count I).

To state a claim for fraud under Utah law, Third-Party Plaintiffs must show "(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representer either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage." *DeMarco v. LaPay*, No. 2:09-CV-190 TS, 2012 WL 3597540, at *3 (D. Utah 2012).  Third-Party Plaintiffs' allegations satisfy each of these elements.  Third-Party Plaintiffs have alleged that they relied on the Tax Vouchers, including the Disavowed Tax Vouchers, and other information provided by ED&F when the Plans submitted tax refunds to SKAT while believing at all times that any information in those Tax Vouchers would be true when they were submitted to SKAT.  Acer TPC ¶¶ 20, 21, 32; Individuals' TPC ¶¶ 25, 26, 38.  Third-Party Plaintiffs have further alleged that ED&F intentionally or recklessly made false statements in the Tax Vouchers and other documentation for the purpose of inducing Third-Party Plaintiffs to rely on those misstatements so that the Plan would submit and continue to submit the Tax Vouchers, including the Disavowed Tax Vouchers, as part

of tax reclaims to SKAT, so that ED&F could charge the Plans fees.  Acer TPC ¶¶ 79-88; Individuals' TPC ¶¶ 79-88.

Notwithstanding those clear allegations, ED&F argues that Third-Party Plaintiffs have not alleged a false statement that was made to induce them to act.  But it is clear that Third-Party Plaintiffs entrusted ED&F to create only truthful documentation as part of the Plans' relationship with ED&F and based all of the Plans' tax refunds on the truthfulness believed to be set forth in ED&F's documentation.  Acer TPC ¶ 85; Individuals' TPC ¶ 25, 38, 84.  Indeed, no tax refund claims would have been submitted to SKAT had ED&F not provided the Plans, including the Plans of which Crema and Wittwer are the trustees and participants, with documentation indicating the Plans' entitlement to the tax refunds.  Acer TPC ¶ 58; Individuals' TPC ¶ 54.  ED&F clearly intended the Third-Party Plaintiffs (and many others) to rely on the information in the Tax Vouchers, because otherwise the reclaim forms would not have been submitted and ED&F would not have charged any fees.  Acer TPC ¶ 34.

ED&F's assertion that the Third-Party Plaintiffs have undermined the materiality requirement by maintaining that they are entitled to the refunds paid by SKAT is similarly misplaced.  As an initial matter, the Disavowed Tax Vouchers' falsity is, to date, only supported by ED&F's own statements made in the midst of judicial proceedings.  Acer TPC ¶¶ 67-68; Individuals' TPC ¶¶ 48, 60–63.  It is the Third-Party Plaintiffs' position that, until the Disavowed Tax Vouchers are proven to be false in this Court, the Third-Party Plaintiffs remain entitled to the refunds paid by SKAT.  Furthermore, ED&F's statements regarding the falsity of the Disavowed Tax Vouchers are at odds with other documents provided by ED&F, such as account statements that reflect the receipt of dividends—documents ED&F has not identified as false despite the supposed falsity of the Disavowed Tax Vouchers and on which Third-Party Plaintiffs relied (and

continue to rely) to form the belief that the Plans actually received dividends from Danish issuers. Acer TPC ¶¶ 30-33; Individuals TPC ¶¶ 36-39.  Finally, Third-Party Plaintiffs also have a number of valid defenses that entitle them to the refunds paid by SKAT.[30]

However, the ownership of shares of a Danish company, and the receipt of a dividend net of withholding tax are material facts with respect to entitlement to a reclaim of those taxes.  The information set forth in the Tax Vouchers was a necessary part of each tax refund request made to SKAT, and the refund requests themselves would not have been made without the Tax Vouchers. Individuals' TPC ¶¶ 26, 29, 31, 54.  Furthermore, ED&F clearly knew of the materiality of its Tax Voucher representations because it only charged fees upon payment of the reclaims by SKAT. Individuals' TPC ¶¶ 76-77.  If the Tax Vouchers prepared by ED&F were truly immaterial, the submission of the tax refunds would not have required the information in those Tax Vouchers, and ED&F's fees would not have been contingent upon the success of a tax refund.

The Third-Party Plaintiffs have also alleged the requisite state of mind.  The requisite state of mind can be pled either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Baxter v. A.R. Baron & Co.*, No. 94 CIV. 3913 (JGK), 1996 WL 586338, at *3 (S.D.N.Y. Oct. 11, 1996).  Third-Party Plaintiffs' allegations meet this burden under either of these tests.  First, Third-Party Plaintiffs allege that ED&F had the motive to commit fraud because by making these false statements, ED&F "put itself in a position to charge the Plans for custody and clearance fees after SKAT accepted the withholding-tax applications

---

[30] *See, e.g.*, Acer Investment Group, LLC and Darren Wittwer's Answer to Skatteforvaltningen's Amended Complaint, *SKAT v. DW Construction, Inc. Retirement Plan*, 18-cv-09797 (S.D.N.Y.) (asserting affirmative defenses, including the Revenue Rule, the statute of limitations, laches, unclean hands, contributory negligence, assumption of risk, and political question doctrine, which, if successful, would entitle Third-Party Plaintiffs to retain the refunds paid by SKAT).

based on the Disavowed Tax Vouchers." Acer TPC ¶ 85; Individuals' TPC ¶¶ 76-77, 83. This Court has previously held that "alleging the amount that defendants had received in payments from SKAT and describing each defendants' role in the scheme" is sufficient to plead motive and opportunity. *In re SKAT Tax Refund Scheme Litig.*, 2020 WL 7059843, at *9; *see Baxter*, 1996 WL 586338, at *3 ("The Third Amended Complaint contains allegations that [third-party defendant] realized sales commissions from the allegedly fraudulent sales of securities to the plaintiffs. This is a direct pecuniary motive tied to the plaintiffs' purchases of securities and provides a sufficient motive for fraud.") (citations omitted).

Moreover, Third-Party Plaintiffs have alleged particular facts constituting evidence of conscious misbehavior or recklessness sufficient to survive a motion to dismiss. They have alleged that ED&F provided the Disavowed Tax Vouchers and other documentation, including account statements and trade confirms concerning the Plans' receipt of dividends and suffering of dividend-withholding taxes. Acer TPC ¶ 83; Individuals' TPC ¶ 81. Moreover, ED&F was in the best position to know—and indeed, was the only party in position to know—the material facts related to the Plans' Tax Vouchers and entitlement to the tax refunds. Acer TPC ¶ 94; Individuals' TPC ¶¶ 34, 55, 94. Finally, at least as to the Tax Vouchers, the mistakes therein do not appear to be one-off, simple mistakes, as ED&F now refuses to stand behind the majority of the Tax Vouchers it created for the Plans—despite the fact that ED&F charged the Plans substantial fees as a result of having provided those Tax Vouchers. Acer TPC ¶¶ 35, 48, 71, 72; Individuals' TPC ¶¶ 49, 58.

     b. *Acer, Crema, and Wittwer sufficiently pleaded Negligent Misrepresentation (Count II).*

In order to state a claim for negligent misrepresentation under Utah law, a plaintiff must allege that the defendant "had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to

rely upon the fact." *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986). The Third-Party Plaintiffs have sufficiently pled all of the elements for negligent misrepresentation against ED&F.

The Third-Party Plaintiffs have alleged that ED&F had a pecuniary interest in the transaction because, as detailed above, ED&F charged and collected fees out of the proceeds of successful withholding-tax applications. Acer TPC ¶ 81; Individuals' TPC ¶ 77. They have also alleged that ED&F was in a superior position to know the material facts because ED&F made material factual misstatements in the majority of the Tax Vouchers created for the Plans, and knew or should have known that the Disavowed Tax Vouchers were inaccurate when it prepared them for the Plans because of ED&F's unique role as custodian over the brokerage accounts and the sole entity responsible for creating the Tax Vouchers. Acer TPC ¶¶ 91-92; Individuals' TPC ¶¶ 91-92.

The Third-Party Plaintiffs have also alleged that ED&F should have reasonably foreseen that they would rely on the Tax Vouchers and other documentation prepared by ED&F. In fact, as noted above, ED&F would send the Tax Vouchers directly to Goal Taxback for the purpose of submitting reclaims applications to SKAT. As also discussed above, ED&F's argument that its misrepresentations were not material is also unavailing. In short, ED&F knew that the Tax Vouchers it created for the Third-Party Plaintiffs were necessary for reclaim applications and would in fact be used for those applications.

   c. *Acer, Crema, and Wittwer sufficiently pleaded Equitable Indemnification (Acer Count III, Wittwer/Crema Count VI).*

ED&F relies upon the same basis in arguing dismissal of the equitable indemnification claims under Rule 12(b)(6), as it does in arguing the claims are improper under Rule 14: that neither Third-Party Plaintiffs, nor ED&F have been found liable to SKAT and therefore equitable

indemnification cannot be alleged.  As explained above, this is an insufficient basis to dismiss the claims and a party does not need to be held liable prior to bringing an indemnification claim under Rule 14.  With respect to its 12(b)(6) argument, ED&F relies only upon the case *Vicidiem, Inc. v. Christensen*, to support its argument here that Third-Party Plaintiffs must first be found liable in order to bring an indemnification claim.  No. 2:19-CV-00358-DBB-DBP, 2020 WL 7027869, at *4 (D. Utah 2020).  However, like the cases discussed above with respect to Rule 14, the claims in *Vicidiem* were not brought under Rule 14 and instead were alleged as separate claims.  *See id.* Therefore, Third-Party Plaintiffs' indemnification claims are properly brought under Rule 14 and do not require that they first be found liable to SKAT in order to bring the claims against ED&F.

> #### d.  Crema and Wittwer's other claims are sufficiently pleaded (Breach of Fiduciary Duty Count III, Unjust Enrichment Count V, Promissory Estoppel Count IV).

A claim for breach of fiduciary duty "requires proof of four elements: (1) a fiduciary relationship; (2) breach of the fiduciary's duty; (3) causation, both actual and proximate; and (4) damages."  *Old Republican Nat. Title Ins. Co. v. Home Abstract & Title Co.*, No. 1:12CV00171, 2014 WL 2918551, at *15 (D. Utah 2014).  Crema and Wittwer have sufficiently alleged all of these elements, particularly that a fiduciary duty existed and that ED&F owed such a duty to Wittwer and Crema.

ED&F argues that the claims for breach of fiduciary duty fail because they do not allege that ED&F owed a fiduciary duty to them, but rather owed a duty to the Plans.  Crema and Wittwer allege in their complaints that "ED&F, as a custodian to the Plan, had a fiduciary relationship" with Crema and Wittwer because of their roles as trustees and sole participants of the Plans. Individuals' TPC ¶ 99.  Crema and Wittwer placed their confidence in ED&F to act in good faith and for the benefit of the Plans.  Individuals' TPC ¶ 99.  Furthermore, both Crema and Wittwer were their respective Plan's sole participants and, accordingly, stand to benefit from their Plans'

-26-

distributions.  Individuals' TPC ¶ 1.  The Utah Supreme Court has held that fiduciary duties can run to intended third-party beneficiaries.  *See Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 355 P.3d 965, 972 (Utah 2015).  Therefore, ED&F owed fiduciary duties to Crema and Wittwer as intended third-party beneficiaries.

ED&F further incorrectly argues that it did not owe any fiduciary duties.  Fiduciary relationships "frequently arise out of trust and confidence consensually placed in the superior knowledge, skill, or judgment of another."  *Steinbrugge v. Haddock*, 281 F.2d 871, 874 (10th Cir. 1960).  Utah courts specifically hold that a fiduciary is in "a position to have and exercise and does have and exercise influence over another."  *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990).  Courts have also found evidence of a fiduciary relationship between a broker-dealer and customer where "[t]he broker receives an economic benefit from making the recommendation, and the customer makes the investment based upon the broker's advice."  *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 886 F.2d 1249, 1258 (10th Cir. 1989).  This is precisely what Wittwer and Crema have alleged.  They allege that ED&F was the only entity that had direct control over information concerning the Plans' brokerage accounts, securities transactions, receipt of dividends, and entitlement to dividend withholding taxes.  Individuals' TPC ¶¶ 55, 100.  They have also alleged sufficient facts to show that the Disavowed Tax Vouchers were submitted based on ED&F's advice and that ED&F received an economic benefit from that submission.  Individuals' TPC ¶¶ 83-84.  Therefore, ED&F was in the position to exercise, and did exercise, influence over Crema and Wittwer through its control over these accounts, and therefore breached a fiduciary duty.

To state a claim for promissory estoppel, Crema and Wittwer must allege "(1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on

the part of the promisee or a third person; and (3) detriment to the promisee or third person." *Cottonwood Imp. Dist. v. Qwest Corp.*, 296 P.3d 754, 755 (Utah Ct. App. 2013). To prove detrimental reliance on the defendant's representation, the plaintiff "must have done some act which [it] otherwise would not have done." *Id.* at 756. All of the elements of the promissory estoppel claims have been adequately alleged. First, Crema and Wittwer have alleged that ED&F promised to exercise reasonable care when, among other things, managing the Plans' custodian accounts, buying or selling securities for the Plans, and keeping records and statements concerning the Plans' brokerage account and ownership of securities. Individuals' TPC ¶¶ 13, 108. ED&F also promised to create only truthful and accurate documents in relation to the Plans' account statements, tax vouchers, and other documentation related to the Plans' securities holdings and brokerage account. Individuals' TPC ¶¶ 14, 109. These promises were clear and definite promises made by ED&F. Second, Crema and Wittwer sufficiently allege that their reliance on ED&F's promises was reasonable. ED&F argues that these promises were directed to the Plans, so ED&F could not reasonably expect Crema or Wittwer to act in reliance on those promises. However, as the sole participants of their Plans, it is reasonable that Crema and Wittwer would rely on ED&F's promises, and that ED&F intended to induce Crema and Wittwer to continue trading through ED&F with their Plans, so that ED&F would continue earning fees from the transactions. Individuals' TPC ¶ 68. Fiduciaries "are to discharge their duties solely in the interest of the participants and for the exclusive purpose of providing benefits to participants and to do so in accordance with the documents and instruments governing the plan." *Carollo v. Cement & Concrete Workers Dist. Council Pension Plan*, 964 F. Supp. 677, 686 (E.D.N.Y. 1997). Therefore, as the trustees and sole participants of their respective Plans, Crema and Wittwer were also

-28-

recipients of ED&F's promises and it was reasonable for Crema and Wittwer to have acted on those promises.

Crema and Wittwer have also sufficiently alleged that ED&F caused a detriment to them as the sole participants of the Plans.  If, as SKAT claims, the Plans never held the shares they claimed to own and are not entitled to the withholding-tax refunds to SKAT, then Crema and Wittwer, as the sole participants of their respective Plans and ultimate beneficiaries, will have been damaged as a result of ED&F's failure to fulfil its promises.  Individuals' TPC ¶¶ 113-114.  Crema and Wittwer have further been damaged by being dragged into litigation as a result of their detrimental reliance on ED&F, incurring legal fees and other costs as a result.  Individuals' TPC ¶¶ 86, 87.

A claim for unjust enrichment requires "(1) a benefit conferred by one person on another; (2) appreciation or knowledge of the benefit by the conferee; and (3) acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit."  *Allen v. Hall*, 148 P.3d 939, 945 (Utah 2006).  Crema and Wittwer have adequately alleged each of the elements for unjust enrichment.  They have alleged that ED&F collected fees in connection with the Plan's transactions, including transactions involving the Disavowed Tax Vouchers.  Individuals' TPC ¶¶ 75, 77, 118.  They have also alleged that it would be unjust for ED&F to retain the fees it collected if SKAT's allegations are proven true, or if SKAT is otherwise entitled to reimbursement of amounts that SKAT paid to the Plans.  Individuals' TPC ¶¶ 78, 121.  ED&F argues that it was the Plans that conferred the benefit on ED&F, but as the sole participants of the Plans, any benefit conferred by the Plans to ED&F was a benefit conferred by the sole participant of the Plans, i.e. Crema and Wittwer.  However, the case upon which ED&F relies for that point – *Desert Miriah, Inc. v. B & L Auto, Inc.* – undermines its argument.  12 P.3d

580, 582-83 (Utah 2000).  In *Desert Miriah, Inc.*, the plaintiff and counterclaim-defendant argued that it did not receive a benefit because the funds that were the subject of the unjust enrichment counterclaim did not come directly from the defendant.  *Id.* at 583.  The Utah Supreme Court found that the first element of unjust enrichment was satisfied because the benefit "was not so far removed from [defendant's] actions as to find that [defendant] did not confer a benefit on plaintiff in making the loan."  *Id.*  Similarly, the fact that the payments to ED&F came from the Plans is not so far removed from Crema and Witter to prevent a finding that Crema and Wittwer as the sole participants of the Plans provided the benefit.  *See id.*

Further, ED&F argues that promissory estoppel and unjust enrichment claims are improper because they are not available remedies where an express contract exists.  Here, Crema and Wittwer's unjust enrichment and promissory estoppel claims do not arise out of a contract between themselves and ED&F.  The express contract existed between ED&F and the Plans, not between ED&F and Crema and Wittwer.  Therefore, there is no contract that would bar Crema and Wittwer's promissory estoppel and unjust enrichment claims.

### e.   The Economic Loss Doctrine does not bar the claims.

The economic loss doctrine does not bar Third-Party Plaintiffs' tort claims because these claims are outside the scope of the economic loss rule.  Under Utah law, "if the plaintiff can point to separate duties—one in contract and one in tort—the economic loss rule does not bar a plaintiff's tort claims."  *Preventative Energy Solutions, LLC v. nCap Ventures 5 LLC*, No. 16-CV-809-PMW, 2017 WL 87028, at *6 (D. Utah 2017).  Utah courts have emphasized that in distinguishing between tort and contract claims "what matters for purposes of applying the economic loss rule is whether the relevant *duty* arises in the contract.  That is a much narrower question than whether the *subject matter* of a dispute is covered by a contract."  *Layton Constr. Co. v. Wrapid Specialty, Inc.*, No. 2:14-CV-00402, 2015 WL 7312896, at *17 (D. Utah 2015).  ED&F, however, seeks an

overly broad application of the economic loss doctrine to prevent tort claims that arise out of the subject matter covered by a contract.  The Utah Supreme Court has stated that at least some fraud claims "lie outside the scope of the economic loss rule."  *DeMarco*, 2012 WL 3597540, at *2; *see also SME Indus., Inc.*, 28 P.3d 669, 680 n. 8 (Utah 2001) ("plaintiffs may recover purely economic losses in cases involving intentional torts such as fraud, business disparagement, and intentional interference with contract").

 As a broker-custodian of the Plans, ED&F owed a duty to Acer, as the Plans' agent, and to Crema and Wittwer, as the sole participants and as trustees of their respective Plans, outside of the duties that arose from the Custody Agreements—which were agreements between ED&F and the Plans, not with any of the Third-Party Plaintiffs directly.  *See In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 317 (S.D.N.Y. 2010) ("[E]ven where a general fiduciary duty is lacking, a relationship of trust and confidence does exist between a broker and a customer with respect to those matters that have been entrusted to the broker . . . This relationship obligates brokers to use reasonable efforts to give [the customer] information relevant to the affairs that [have] been entrusted to them.") (internal quotations omitted).  Therefore, Third-Party Plaintiffs' fraud claims are brought under this duty, rather than any duty imposed by an agreement or contract.

The duty underlying a negligent misrepresentation tort is a duty "to exercise reasonable care or competence in obtaining or communicating the information."  *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (quoting Restatement (Second) of Torts § 552(1) (1965)).  Importantly, those claims are "based not on principles of contractual obligation but on principles of duty and reasonable conduct."  *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo. 1991).  Therefore, the duty that ED&F owed the Third-Party Plaintiffs did not arise out of any contract or agreement, and ED&F should not be allowed utilize contract law

to shield liability. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000), *aff'd*, 532 U.S. 588, 121 S. Ct. 1776, 149 L. Ed. 2d 845 (2001) (where a party "has negligently given false information with knowledge that the other party would act in reliance on that information in a business transaction with a third party," that breaching party is "a tortfeasor and may not utilize the law of contract to shield liability in tort for the party's deliberate or negligent misrepresentations.")

Additionally, Crema and Wittwer's breach of fiduciary duty claims arose not from a contract or any agreement with ED&F, but from the parties' fiduciary relationship stemming from their role as the sole beneficiaries of the Plans. "A fiduciary is a person with a duty to act primarily for the benefit of another" and one who "is in a position to have and exercise and does have and exercise influence over another." *First Sec. Bank of Utah N.A.*, 786 P.2d at 1333 (*quoting Dennison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982)). Third-Party Plaintiffs have alleged facts supporting that ED&F held an advantage in its business dealings and that ED&F had superior business knowledge it used to take advantage of Third-Party Plaintiffs. Third-Party Plaintiffs allege that "[b]ecause of ED&F's unique position as broker-custodian for the Plans and its access to all relevant information concerning the Plans' securities, holdings, receipt of dividends, withholding-tax suffered in relation to those dividends, and entitlement to dividend withholding taxes, ED&F possessed all of the information necessary to determine the accuracy of the information of the Disavowed Tax Vouchers at the time ED&F sent them to the Plans and Acer." Individuals' TPC ¶ 55. Therefore, Crema and Wittwer's claims for breach of fiduciary duty arise out of tort and should not be barred by the economic loss doctrine.

      *f.   Acer, Crema, and Wittwer sufficiently pleaded Apportionment of Fault (Acer Count IV, Wittwer/Crema Count VII).*

Finally, ED&F argues that Third-Party Plaintiffs' apportionment of fault claims cannot stand because none of the other causes of action asserted against ED&F are actionable. For the reasons stated above, it is clear that Third-Party Plaintiffs' claims are actionable, and therefore apportionment of fault is properly pleaded. Furthermore, the District of Utah has previously allowed apportionment of fault claims to stand where a third-party plaintiff asserted no substantive claims against the third-party defendants. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Queen Carpet Corp.*, 5 F. Supp. 2d 1246, 1251 (D. Utah 1998) (finding it was in the "best interests of the litigants, as well as the federal judicial system, to allow all claims for fault and for apportionment to be heard in one proceeding" despite the lack of any other claims against the third-party defendant). Therefore, Third-Party Plaintiffs' apportionment of fault claims are proper.

## **<u>CONCLUSION</u>**

For the foregoing reasons, ED&F's motions to dismiss the Third-Party Plaintiff's claims should be denied.

May 21, 2021                    Respectfully submitted,

                               K&L GATES LLP

                               */s/ John C. Blessington*
                               John C. Blessington (*pro hac vice*)
                                 john.blessington@klgates.com
                               Brandon R. Dillman (*pro hac vice*)
                                 brandon.dillman@klgates.com
                               Michael R. Creta (*pro hac vice*)
                                 michael.creta@klgates.com
                               John L. Gavin (*pro hac vice*)
                                 john.gavin@klgates.com
                               K&L GATES LLP
                               State Street Financial Center
                               One Lincoln Street
                               Boston, MA  02111
                               T: 617.261.3100
                               F: 617.261.3175

                               *Attorneys for Darren Wittwer, Robert*
                               *Crema, and Acer Investment Group, LLC*